UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL P. CHECKA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>RITE AID OF<br>WASHINGTON, D.C., INC.,<br><br>　　　　　Defendant. | Case No. 1:07CV00099 (GK)<br>Judge Gladys Kessler<br><br>Next Scheduled Deadline:<br>Joint Pretrial Statement Due<br>December 7, 2007 |

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT RITE AID OF WASHINGTON, D.C., INC.'S MOTION FOR SUMMARY JUDGMENT**

I.   **INTRODUCTION**

Defendant, Rite Aid of Washington, D.C., Inc. ("Rite Aid"), filed its Motion for Summary Judgment, and supporting documentation on November 1, 2007. Plaintiff filed his Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Opposition"), and supporting documentation on November 16, 2007. Nothing in Plaintiff's Opposition detracts from the appropriateness of summary judgment in favor of Rite Aid. Mr. Checka has failed to establish a disputed issue of material fact or to demonstrate that Rite Aid's reasons for its decision to terminate his employment were discriminatory.

II.   **ARGUMENT**

　　A.   **The Declarations Offered By Plaintiff Fail To Establish A Genuine Issue Of Material Fact.**

Mr. Checka has submitted Declarations from himself, three Rite Aid employees and a Rite Aid customer. These Declarations are irrelevant and/or unsubstantiated, and fail to establish

a genuine issue of disputed material fact.

### 1. Mr. Checka's Declaration And Opposition Do Not Create A Disputed Issue Of Material Fact.

Mr. Checka has attached his own Declaration to his Opposition. In his Declaration, and in his Statement of Disputed Material Facts and Opposition, he attempts to create genuine issues of material fact through irrelevant or second-hand statements and statements that are contradictory to his deposition testimony. Such self-serving declarations cannot establish a disputed issue of fact to defeat summary judgment. Globalaw Ltd. v. Carmon & Carmon Law Office, 452 F. Supp. 2d 1, 8 (D.D.C. 2006); Keeley v. Small, 391 F. Supp.2d 30, 49 (D.D.C. 2005).

#### a. Mr. Checka Has No First-Hand Knowledge Of The Steve Obidike Situation.

"All supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thomas v. Paulson, 507 F. Supp. 2d 59, 75 (D.D.C. 2007) (citing Fed. R. Civ. Pro. 56(c)). Mr. Checka includes in his Declaration a description of the incident between Steve Obidike and Angela Nwosu at a different store eight months earlier. (Checka Decl. ¶ 17.) Mr. Checka acknowledged at his deposition, however, that he did not observe this incident, but had been told about it by co-workers (who also did not observe it). (Checka Dep. 106-107). This third-hand account does not constitute evidence. See Thomas, 507 F. Supp.2d at 75; see also Gleklen v. Democratic Congressional Campaign Comm., Inc., 199 F.3d 1365, 1369 (D.C. Cir. 2000) (hearsay evidence properly disregarded because it could not be converted into admissible evidence for trial).

### b. Mr. Checka's Declaration And Opposition Contradict His Deposition Testimony.

"[A] party's affidavit which contradicts [his or her] own prior deposition testimony should be disregarded on a motion for summary judgment." Globalaw, 452 F.Supp.2d at 8; Childs-Pierce v. Util. Workers Union of Am., 383 F. Supp. 2d 60, 63 n.2 (D.D.C. 2005). In his Statement of Disputed Material Facts, Mr. Checka claims that he offered to pay Mr. Alene's out-of pocket medical expenses after the incident because he felt badly that Mr. Alene had injured himself, not because it was his fault. (Plaintiff's Statement of Disputed Material Facts ¶ 15.) However, this statement contradicts his deposition testimony, wherein he stated that he offered to pay Mr. Alene's medical expenses because "it was my questions he responded to…'what do you have to say to me now?'" (Checka Dep. 114.).

Mr. Checka further states in his Opposition that the "alleged 'admissions'" that led to his termination were actually denied by him. (Opposition ("Opp.") at 5.) This contention directly contradicts all of his previous statements. In his Declaration, Scott Zavinski stated that Mr. Checka admitted to chasing Mr. Alene, asking him "what do you have to say to me now?" while moving towards him, and blocking his exit from the storeroom. (Zavinski Decl. ¶ 12.a, Ex. 2.) Mr. Checka acknowledged engaging in this conduct during his deposition. (Checka Dep. 73, 77-78, 101-102, 112.) Moreover, Mr. Checka admits to this same conduct in his Declaration. (Checka Decl. ¶¶ 9-12.) The fact that he now characterizes his actions as "harmless" does not undermine his admissions that he engaged in such conduct. Mr. Checka has repeatedly admitted engaging in conduct that Rite Aid concluded was threatening and a violation of policy. Mr. Checka's unsupported claim to the contrary does not create evidence of a disputed material fact. See Childs-Pierce, 383 F. Supp. 2d at 63.

### 2. The Declarations Of Rite Aid Employees Contain Inadmissible Opinion And Hearsay Testimony.

Mr. Checka has submitted the declarations of current or former Rite Aid employees David Christopher Green, Sherry Persaud and Harold Vizian. These declarations – two of which are unsworn – do not create a disputed issue of material fact.

As a preliminary matter, the declarations of Sherry Persaud and Harold Vizian are undated and unsigned, and Ms. Persaud's Declaration is clearly marked "DRAFT." It is well settled that exhibits and other documents supporting and opposing summary judgment must be of such quality as to be admitted at trial. Frito-Lay, Inc. v. Willoughby, 863 F.2d 1029, 1034 (D.C. Cir. 1988). Accordingly, the Court should disregard these unsigned declarations.

Even if these declarations were properly before the Court, they do not create a disputed issue of fact regarding Rite Aid's reasons for terminating Mr. Checka. Affidavits composed of hearsay and opinion evidence do not satisfy the requirements of Rule 56(e) and must be disregarded. Hatcher v. Haley, 762 F. Supp. 393, 400 (D. D.C. 1991) (citing Ritz v. O'Donnell, 185 U.S. App. D.C. 66, 566 F.2d 731 (D.C. Cir. 1977). Neither Mr. Green, Ms. Persaud nor Mr. Vizian witnessed the incident between Mr. Checka and Mr. Alene. These declarations essentially amount to statements of the declarants' opinion that Mr. Checka is not violent and they do not believe that he struck Mr. Alene. (Green Decl. ¶ 4; Persaud Decl. ¶ 11; Vizian Decl. ¶ 6.) This hearsay opinion evidence does not constitute evidence to dispute Rite Aid's reasons for terminating Mr. Checka and, therefore, must be disregarded. See Hatcher, 762 F. Supp. at 400.

### 3. Rite Aid Customer Norman Collins Did Not Witness The Confrontation Between Checka And Alene And Was Not Known To Rite Aid When It Terminated Mr. Checka.

In his Opposition, Mr. Checka describes Norman Collins as an "eye-witness" to the incident between Mr. Checka and Ashenafi Alene of February 5, whose statement and Declaration "totally corroborated [Mr. Checka's] version of events and exonerated him from any credible claim of violence." (Opp. at 4, 5-6.) However, Mr. Checka's description does not match the facts asserted by Mr. Collins in his statement to Mr. Zavinski or his Declaration. In fact, Mr. Collins acknowledged that he did not witness the incident.

Rite Aid was not informed that anyone had allegedly witnessed any part of the incident until June 2005, four months after it had completed its investigation and terminated Mr. Checka. It is illogical to suggest that, in making its termination decision, Rite Aid ignored something of which it had no knowledge. In any event, there was nothing in Mr. Collins' account of what he witnessed on February 5 to contradict Rite Aid's findings that Mr. Checka had acted in a threatening manner towards Mr. Alene.

In both his Declaration and his conversation with Mr. Zavinski, which occurred after Mr. Checka appealed to Rite Aid to reconsider his termination, Mr. Collins stated only that he was exiting the men's room of Store #3845 when he saw "a small black man" rush past him. (Def. Doc. Prod. Doc. No. D-00172; D-00138-140.) Nothing in Mr. Collins' statement or Declaration contradicted Rite Aid's findings that, Mr. Checka chased Mr. Alene into the storeroom, moved quickly toward him, asked Mr. Alene what he had to say to him now that he had nowhere to run, and blocked his exit from the storeroom. (Zavinski Decl. ¶ 12, Ex. 2.) Mr. Collins acknowledged that he did not witness any interaction between Mr. Checka and Mr. Alene before or after Mr. Alene was injured. Accordingly, Mr. Collins' Declaration does not create a disputed issue of material fact regarding the reasons for Mr. Checka's termination.

**B.  Plaintiff Has Failed To Rebut Rite Aid's Legitimate, Nondiscriminatory Reasons For His Termination.**

Mr. Checka raises several issues in his Opposition in an attempt to demonstrate that Rite Aid's stated reasons for his termination were actually a pretext for discrimination. Mr. Checka questions the Company's policy prohibiting violent and inappropriate behavior in the workplace. He also claims that he was terminated to "keep the peace" among his non-white co-workers. However, Mr. Checka's allegations are unsupported and do not create evidence of discrimination.

**1.  The Company's Policy Regarding Violence In The Workplace Did Not Change.**

Mr. Checka claims that Rite Aid has changed its explanation for its decision to terminate him. Mr. Checka claims that, at the time of his termination, he was informed by Rite Aid that he was being terminated for violating the Company's policy regarding "violence in the workplace," but that Rite Aid now claims he was terminated for violating the Company's Violent and Inappropriate Behavior in the Workplace policy. (Opp. at 6.) The fact that he was told he was terminated for violating the Company's "violence in the workplace policy," but the policy's actual title includes the phrase "and inappropriate behavior" is immaterial. It does not constitute a change in Rite Aid's explanation for its decision. Rite Aid has always maintained that Mr. Checka was terminated for violating its policy against violence in the workplace.

Mr. Checka also claims, contrary to the undisputed evidence, that the Company's policy, which prohibits "[d]isplaying threatening, physically aggressive or violent behavior that intimidates or instills fear in others [or] [m]aking threats of any kind, verbally, physically or in writing," took effect after his termination. Although the copy of the policy provide by Rite Aid is dated after Checka's termination, the undisputed testimony of Scott Zavinski establishes that this is the same version of the policy that was in effect at the time of Checka's termination in

February 2005. (Zavinski Decl. ¶ 8). Moreover, Mr. Checka acknowledged during his deposition that he was aware that he could be subject to discipline for engaging in violent or threatening behavior in the workplace. (Checka Dep. 66-68.) Rite Aid concluded that Mr. Checka engaged in such behavior and he was disciplined accordingly. Mr. Checka has failed to present any evidence to demonstrate that Rite Aid's application of its violence in the workplace policy to Mr. Checka was discriminatory.

### 2. Plaintiff Has Presented No Evidence To Support His Claim That He Was Terminated To "Keep The Peace" In The Store.

Mr. Checka acknowledges in his Opposition that a court may not second-guess an employer's personnel decision absent evidence of discrimination. (Opp. at 7.) Mr. Checka attempts to overcome this burden by fabricating a discriminatory motive. Mr. Checka claims that Rite Aid decided to terminate and "sacrifice him to 'keep the peace.'" (Opp. at 7.) In his Declaration, Mr. Checka further claims that Rite Aid "made the determination that I should be sacrificed to preserve the peace among the overwhelmingly black or minority population of that store regardless of the obvious truth of the situation." (Checka Decl. ¶ 16.) Notwithstanding the fact that these allegations are utterly unsupported by the record, they are contradicted by Mr. Checka's other statements and the other declarations attached to his Opposition.

Although he acknowledges that the relevant decision makers were white, Mr. Checka claims that the store's employees were almost exclusively non-white. (Checka Decl. ¶ 5.) He alleges that the decision makers felt compelled to terminate Mr. Checka to "keep the peace" among his non-white co-workers. (Opp. at 4.) These statements are unsupported and self-serving, and the Court should disregard them. See Keeley v. Small, 391 F. Supp.2d at 49. In addition to being unsupported, the contention is nonsensical when considered in light of Mr. Checka's statements and the statements of other employees. Mr. Checka claims that, although

the store's employees were almost exclusively non-white, he "got along with all personnel and management." (Checka Decl. ¶ 5.) He states that he had an "unblemished career" at Rite Aid. (Checka Decl. ¶ 14.) He also claims that Mr. Alene had a history of "misbehavior," "untruths," and "antics." (Checka Decl. ¶¶ 13, 14.) The declarations of his co-workers contain similar statements. (Green Decl. ¶ 4; Persaud Decl. ¶ 9; Vizian Decl. ¶ 4, 6.) These same individuals describe Mr. Checka as professional. (Green Decl. ¶ 4; Persaud Decl. ¶ 11; Vizian Decl. ¶ 6.)

In light of these statements, there was no reason for Rite Aid to believe that the store's employees wanted to protect Mr. Alene at the expense of Mr. Checka. The only "evidence" Mr. Checka presents to support his claim is his unsupported statement that the store was almost exclusively non-white. Even if it were admissible, this evidence is insufficient to create an inference of discrimination.

Mr. Checka has presented no evidence of a discriminatory motive for his termination. Mr. Checka simply disagrees with the decision to terminate him for violating the Company's violence in the workplace policy. Title VII, however, does not "permit a court to act as a 'super-personnel department that reexamines an entity's business decisions.'" McNally, 498 F. Supp. 2d at *36-37 (citing Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999)). Even if a court believes that an employer made a mistake, it may not "'second-guess an employer's personnel decision absent [a] demonstrably discriminatory motive.'" McNally, 86 F.3d at 1183. Rite Aid terminated Mr. Checka's employment based solely on its conclusion that he violated the Company's violence in the workplace policy. Accordingly, Rite Aid is entitled to summary judgment.

### III. <u>CONCLUSION</u>

For the foregoing reasons, and the reasons stated in its Motion for Summary Judgment and supporting Memorandum, Rite Aid requests that the Court grant its Motion, and dismiss Plaintiff's Amended Complaint with prejudice.

Dated: November 28, 2007

Respectfully submitted,

LITTLER MENDELSON, P.C.

_____/s/_____
Katherine E. Bierma Pregel
D.C. Bar No. 486615
1150 17th Street, N.W.
Suite 900
Washington, DC 20036
202.842.3400 Telephone
202.842.0011 Facsimile
kbpregel@littler.com

Theodore A. Schroeder
(Admitted *Pro Hac Vice*)
625 Liberty Avenue
26th Floor
Pittsburgh, PA 15222
412.201.7600 Telephone
412.774.1959 Facsimile
tschroeder@littler.com

Counsel for Defendant
Rite Aid of Washington, D.C., Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing Defendant Rite Aid of Washington, D.C., Inc.'s Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment was served via ECF Electronic Filing this 28th day of November, 2007, upon:

> Robert F. Condon, Esquire
> Artabane & Belden, P.C.
> 818 18th Street, N.W.
> Suite 410
> Washington, DC 20006
>
> Counsel for Plaintiff

          /s/
Katherine E. Bierma Pregel