## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MICHAEL P. CHECKA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:07CV00099 (GK) |
| | ) | Judge Gladys Kessler |
| v. | ) | |
| | ) | Next Scheduled Deadline: |
| | ) | Pretrial Conference |
| | ) | December 18, 2007 |
| RITE AID OF | ) | |
| WASHINGTON, D.C., INC., | ) | |
| | ) | |
| Defendant. | ) | |

## JOINT PRETRIAL STATEMENT

Pursuant to Fed R. Civ. P. 16 and Local Rule 16.5(b) of the United States District Court, the parties, by and through undersigned counsel, hereby submit their Joint Pretrial Statement.

## 1.    Parties and Counsel

Counsel for Plaintiff Michael P. Checka

Robert F. Condon, Esq.
Artabane & Belden
818 18th Street, N.W., Suite 410
Washington, D.C. 20006
(202) 861-0070


Counsel for Defendant Rite Aid of Washington, D.C., Inc.

Katherine E. Bierma Pregel, Esq.
Littler Mendelson, P.C.
1150 17th Street, N.W., Suite 900
Washington, D.C. 20036
(202) 842-3400
(202) 842-0011 (facsimile)
kbpregel@littler.com

Theodore A. Schroeder, Esq.
Littler Mendelson, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, Pennsylvania 15222
(412) 201-7600 (telephone)
(412) 774-1959 (facsimile)
tschroeder@littler.com

## 2.    Nature of the Case

This is a reverse race discrimination case brought by Plaintiff, Michael P. Checka, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). Mr. Checka was employed by Defendant Rite Aid of Washington, D.C., Inc. as a pharmacist from 1997 until his termination on February 5, 2005. Rite Aid maintains that it terminated Mr. Checka for violating the Company's violence in the workplace policy. Mr. Checka claims that his termination was discriminatory. Mr. Checka alleges that he was subject to disparate treatment by Rite Aid due to his race, white.

The Court has jurisdiction over this matter because it has been brought pursuant to 42 U.S.C. §§ 2000e, et seq. Venue is proper because Defendant Rite Aid of Washington, D.C., Inc. transacts business and at all relevant times did transact business in the District of Columbia. In addition, Mr. Checka was employed by Rite Aid in the District of Columbia and all actions complained of by Mr. Checka are alleged to have taken place in the District of Columbia.

### 3.    Claims and/or Defenses

Plaintiff's Claims

The action brought by the Plaintiff is one founded in the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e, et. seq. Plaintiff claims that Defendants discriminated against him in his employment in that they engaged in conduct, his discharge, as an act of reverse discrimination, intentionally taking adverse action against him, that was not taken against another of a different race similarly situated.

Defendant Defenses

Defendant raises the following defenses to Plaintiff's wrongful discharge claim as well as to his requested relief:

1.    Plaintiff's race discrimination claim fails because Plaintiff cannot establish a *prima facie* case of intentional discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*

2.    Plaintiff's race discrimination claim fails because Plaintiff cannot establish the requisite "background circumstances" of discriminatory motive to support the first prong of his *prima facie* case.

3.    Plaintiff's race discrimination claim fails because Plaintiff cannot establish that his termination gives rise to an inference of discrimination to support the first prong of his *prima facie* case because he cannot establish that he was similarly situated to his alleged comparator.

3

4.      Plaintiff's race discrimination claim fails because Plaintiff cannot present any evidence that Defendant's legitimate, non-discriminatory reasons for terminating him are pretextual.

5.      Plaintiff's race discrimination claim fails because Plaintiff cannot rebut Defendant's legitimate, non-discriminatory reasons for terminating him.

6.      Plaintiff's race discrimination claim fails because Plaintiff cannot demonstrate that Defendant's decision to terminate him was motivated by discriminatory animus.

7.      Plaintiff's claim for damages is limited by Plaintiff's failure to mitigate his damages.

## 4.      Undisputed Issues/Stipulations

Plaintiff reserves the right to object to the admissibility at trial of certain of the following fact statements.

1.      Rite Aid hired Plaintiff Michael P. Checka ("Mr. Checka"), a white male, on May 18, 1997 as a pharmacist at the Rite Aid store located at 3301 New Mexico Avenue, N.W., Washington, D.C. 20016.

2.      As a pharmacist, Mr. Checka was responsible for ensuring that prescriptions were properly filled and dispensed to customers.  Mr. Checka also supervised pharmacy technicians working with him.

3.      Mr. Checka was aware that engaging in violent or threatening behavior during his employment could subject him to termination.

4.      In July 1998, Mr. Checka transferred to Rite Aid Store #3846, located at 1815 Connecticut Avenue, N.W., Washington, D.C. 20009.

5.      Mr. Checka's performance was generally acceptable.

6.      In November 1999, Mr. Checka was promoted to the position of Pharmacy Manager of Store #3846.

7.      As Pharmacy Manager, Mr. Checka was responsible for the overall operations of the pharmacy.  Moreover, in the absence of other supervisory personnel, Mr. Checka was responsible for the total operations of the store and its personnel.  Mr. Checka, like all managerial personnel, was responsible for enforcing the Company's rules and policies.

8.      On February 5, 2005, an incident occurred between Mr. Checka and Ashenafi Legesse Alene ("Mr. Alene"), an entry-level associate at Store #3846.

9.      According to Mr. Checka, on that day, Mr. Checka went to a storage room in the back of the store where the restrooms are located.  At that time, Mr. Alene was also in storage room.

10.      Mr. Checka stood between Mr. Alene and the exit from the storage area.  Other than to try and go past Mr. Checka, there was no way for Mr. Alene to exit the storage area other than to go out the back door.  Employees are not permitted to exit through the back door.  Mr. Alene turned around and moved towards the back of the storage room while Mr. Checka took steps in his direction.

11.      According to Mr. Checka, Mr. Alene tripped over some crates and fell down.  According to Mr. Alene, Mr. Checka punched him in the face.

12.      As a result of the incident, Mr. Alene's nose was bleeding.  Blood spattered on Mr. Checka's smock.

5

13.   Mr. Checka offered to help Mr. Alene clean his wound, but Mr. Alene refused.

14.   Instead, Mr. Alene re-entered the front area of the store where he saw employees Donna Maria Brooks, cashier, and Shakia Carmichael, clerk.

15.   Ms. Brooks told Mr. Alene that she would assist him in filling out an incident report.

16.   The store's shift supervisor, Mukund Karnik, then called Mr. Checka on the store phone and asked him what had happened. Mr. Checka told Mr. Karnik that Mr. Alene fell in the bathroom.

17.   A police officer who happened to be in the store at the time arrested Mr. Checka. Mr. Checka was booked for assault and battery and released at 6:30 p.m. He then returned to the store to finish his shift.

18.   When he returned to work, Mr. Checka called his supervisor, Anand Shah, Pharmacy District Manager. Mr. Shah told Mr. Checka not to report to work the next day. Mr. Shah subsequently informed Mr. Checka that he was suspended pending the investigation regarding Mr. Alene's allegations.

19.   On February 22, 2005, Mr. Checka's assault and battery charge was "no papered" by the United States Attorney.

20.   At the time of the February 5 incident between Mr. Checka and Mr. Alene, Scott Zavinski, white, was employed as Rite Aid's Human Resources Manager for Region 60, which includes Rite Aid stores in the District of Columbia, Maryland and Virginia.

21.    As Human Resources Manager for this region, Mr. Zavinski was responsible for employees of Rite Aid of Washington, D.C., Inc. working at Rite Aid stores in the District of Columbia.

22.    Mr. Zavinski's duties as a Human Resources Manager included, among other things, training, recruiting, administering Rite Aid's employment policies, partnering with district managers and pharmacy development managers to ensure compliance with these policies and applicable employment laws, and investigation of allegations of employee misconduct.

23.    As Human Resources Manager for Region 60, Mr. Zavinski reported directly to the Regional Vice President, Bill Jackson, white. Mr. Zavinski also consulted with Wayne LeClair, white, Rite Aid's Vice President of Human Resources Administration, in the administration of his duties.

24.    When issues of employee misconduct were reported to Mr. Zavinski, he was responsible for investigating them and making recommendations regarding appropriate discipline, up to and including termination. Termination decisions were ultimately approved by the Regional Vice President, Bill Jackson.

25.    On or about February 5, 2005, Mr. Zavinski was informed that Mr. Checka had allegedly assaulted Mr. Alene.

26.    Mr. Zavinski conducted an investigation regarding the allegations.

27.    Mr. Zavinski interviewed Mr. Alene. Mr. Alene claimed that Mr. Checka punched him in the face.

28.    Mr. Zavinski also interviewed eight other employees who worked in Store #3846, and received statements from several of them.  None of the associates witnessed the incident.

29.    David Green, pharmacy intern, informed Mr. Zavinski that Mr. Checka told him that he had "lunged" at Mr. Alene.

30.    Tonya Chatman, pharmacy technician, informed Mr. Zavinski that she was working on the second floor of Store # 3845 on the afternoon of February 5 and saw Mr. Alene with blood on his nose and hands.  Mr. Alene told her that Mr. Checka had "punched him in the face."

31.    Shakia Carmichael, associate, also informed Mr. Zavinski that Mr. Alene told her that Mr. Checka punched him in the face.  She told Mr. Zavinski that she found it hard to believe that Mr. Alene fell due to the amount that he was bleeding.

32.    Donna Maria Brooks, shift supervisor, told Mr. Zavinski that she saw Mr. Alene come from the back of the store and that his vest was covered with blood. She also saw Mr. Checka return to the pharmacy area, where he washed his hands. She stopped Mr. Alene and advised him to come with her to complete an incident report.

33.    On February 9, 2005, Mr. Zavinski interviewed Mr. Checka regarding the incident and reviewed Mr. Checka's written statement regarding the incident.

34.    Mr. Checka claimed that Mr. Alene's nose was bloodied when he fell over boxes in a storage room.

35.    Mr. Checka admitted to asking Mr. Alene what he had to say to him now that he had nowhere to run, or words to that effect.

36.    Mr. Alene's nose was bloodied as a result of the incident, and his blood was spattered on Mr. Checka's smock.

37.    On February 11, 2005, Mr. Checka was informed by Mr. Shah that his employment was terminated for violating Rite Aid's violence in the workplace policy.

38.    Following his termination, Mr. Checka, through counsel, challenged his termination and sought reinstatement.

39.    In June, 2005, four months after Mr. Checka's termination, Mr. Checka's counsel contacted Mr. LeClair and informed him that a customer, Norman Collins, had witnessed the February 5 incident.   No one, including Mr. Checka, had previously mentioned such a witness.

40.    Mr. Checka's counsel submitted a Declaration from Mr. Collins to Mr. LeClair.

41.    In his Declaration, Mr. Collins stated that, on February 5, 2005, he was exiting the men's room of Store #3845, when he saw "a small black man" rush past him and trip over some milk crates.   He also saw Mr. Checka.   He did not hear any conversation between the two men.

42.    Mr. Zavinski interviewed Mr. Collins on July 13, 2005.   Mr. Collins informed Mr. Zavinski that he was exiting the restroom in the storeroom on February 5, 2005, when he saw Mr. Alene "rush" past him and fall on some boxes or milk crates.   He said that he saw Mr. Checka leaning against the doorway of the storeroom.   He said that he walked by Mr. Checka and left the store.   He further said that he did not hear or observe any exchange between Mr. Alene and Mr. Checka prior to seeing Mr. Alene fall.

43.    Although Mr. Collins said that he walked past Mr. Checka when exiting the storeroom, Mr. Checka does not recall seeing Mr. Collins in the storeroom that day.

44.    Rite Aid informed Mr. Checka's counsel that the Company was upholding Mr. Checka's termination.

45.    In June 2004, Mr. Zavinski was informed of an alleged incident at Store #2653 involving Chukwuemeka "Steve" Obidike, a pharmacist at that store.

46.    Angela Nwosu, a pharmacy technician at Store #2653, claimed that on June 15, 2004, Mr. Obidike grabbed her by the forearm and pushed her.

47.    Mr. Zavinski conducted an investigation into this incident, in which he interviewed Mr. Obidike, Ms. Nwosu, Store Manager James Felix, and Security Guard Eugene Brown.

48.    There were no eyewitnesses to the alleged incident.  Mr. Obidike denied that it occurred and claimed that the allegations were based on his race and national origin.

49.    Mr. Obidike was suspended without pay during the investigation of the incident.  Because Rite Aid was unable to conclude that he violated the Company's violence in the workplace policy, Mr. Obidike was reinstated to work with a warning that any future incidents could result in his termination.

50.    Mr. Checka did not observe the alleged incident between Mr. Obidike and Ms Nwosu.

51.    On December 1, 2005, Mr. Checka filed a charge of discrimination with the District of Columbia Office of Human Rights.  The Charge was cross-filed with the United States Equal Employment Opportunity Commission ("EEOC").

52.     On August 28, 2006, the D.C. Office of Human Rights issued a Letter of Determination finding No Probable Cause "to believe that [Mr. Checka] was subjected to disparate treatment on the basis of his race (White) when he was terminated in February 11, 2005 due to [Rite Aid's] Zero Tolerance Policy for Violence in the Workplace."

53.     On October 26, 2006, the EEOC issued a Dismissal and Notice of Rights adopting the findings of the D.C. Office of Human Rights.

54.     On January 16, 2007, Mr. Checka filed a Complaint against Rite Aid Corporation in this Court alleging discrimination based on race.

55.     On April 17, 2007, Mr. Checka filed his Amended Complaint in this Court against Rite Aid Corporation and Rite Aid of Washington, D.C., Inc.

56.     On July 16, 2007, Mr. Checka voluntarily dismissed Rite Aid Corporation as a Defendant to his Amended Complaint.

57.     In 2004, Mr. Checka's last full year of employment with Rite Aid, he made $108,437.00.

58.     In 2005, Mr. Checka made $16,721.00, all from his employment at Rite Aid through February 11, 2005.

59.     In 2006, Mr. Checka made $40,505.00.

**5.     Witness Schedule**

Plaintiff's Witnesses

Plaintiff expects to call the following individuals as witnesses:

A.     Plaintiff Michael Checka

Mr. Checka is expected to testify as to his professional history including his employment by Rite Aid, the events of February 5, 2005 as they related to his interaction

with Mr. Alene (Ashanafi) both before and after the event that resulted in Mr. Alene bloodying his nose, and his treatment by Defendant as it relates to the termination of his employment.  Mr. Checka will also testify regarding the lost income that resulted from his termination and other claimed damages.  Plaintiff believes Mr. Checka's testimony will last two (2) hours.

    B.    Norman Collins
          603 Twinbrook Parkway
          Rockville, Maryland 20851

Mr. Collins is expected to testify concerning his observations in the storeroom at the Rite Aid store on February 5, 2005, the circumstances that caused him to be present at that place and time and to the fact that Mr. Checka never struck Mr. Alene while he was present and that Mr. Checka was 15-20 feet away from Mr. Alene when the latter fell striking his face on the ground.  Plaintiff anticipates Mr. Collins' testimony will last thirty(30) to forty-five (45) minutes.

    C.    David Christopher Green
          7963 Riggs Road, Unit 4
          Adelphi, Maryland 20783

Mr. Green is expected to testify concerning his presence in the Rte Aid Pharmacy as an intern on February 5, 2005.  He is expected to state what he saw after Mr. Checka and Mr. Alene exited the storeroom as well as what was said by Mr. Checka during a later telephone call Mr. Checka received from a supervisor, Markun Karnik, and he will clarify the use of the term "lunged" that was contained in a written statement given by Mr. Green to the Rite Aid investigator.  Mr. Green is also expected to testify regarding his observations of Mr. Checka demeanor and personality as a supervisor in the pharmacy

while he was employed there.  Plaintiff anticipates Mr. Green's testimony will last thirty (30) to forty-five (45) minutes.

      D.    Harold D. Vizian
              4716 Bradley Boulevard
              Apt. #105
              Chevy Chase, Maryland 20815

Mr. Vizian, a pharmacy intern at the Rite Aid store in question in February 2005, is expected to testify as to the pattern of behavior generally of Mr. Alene, the interactions that took place on a regular basis in the Rite Aid store between Mr. Alene and Mr. Checka and other employees in the store and that such behavior was "horseplay" and not taken seriously by anyone, including Mr. Alene and Mr. Checka.  Also, that these incidents were common knowledge of both staff and management at the store.  He will describe the cluttered condition of the storeroom and will testify concerning the general demeanor and personality of Mr. Checka as a supervising pharmacist at the Rite Aid store during his employment there.  Plaintiff anticipates Mr. Vizian's testimony will last thirty (30) minutes.

Plaintiff may call the following individuals as witnesses should the need arise:

      E.    Steve Obidike
              (present address not known but will be provided when ascertained.)

Mr. Obidike may testify about his employment at the Rite Aid store on Georgia Avenue in the District of Columbia, the incident that occurred there involving him and a black female employee at the store that resulted in him being arrested, and his subsequent reinstatement as soon as the case was "no papered" by the District of Columbia prosecutors.  Plaintiff anticipates that Mr. Obidike's testimony will last thirty (30) minutes.

F.    Wendy Brown
7253 South Ora Court
Greenbelt, Maryland 20770

Ms. Brown, a Pharmacy Manager at a Rite Aid store in Maryland and a former intern at the Rite Aid store that employed Mr. Checka, may testify about her employment relationship with Mr. Checka, for whom she worked as a pharmacy intern from 2000 to 2004, but for whom she had previously worked while in school since 1995, his demeanor and character, the demeanor and character of Mr. Alene, particularly Mr. Alene's pattern of behavior of teasing and general antics. Plaintiff anticipates Ms Brown's testimony will last thirty (30) minutes.

G.    Sherry Persaud
c/o Hilton Hotels
Connecticut Avenue, N.W.
Washington, D.C.

Ms. Persaud, who worked as a pharmacy intern at the Rite Aid store that employed Mr. Checka from 1999 to 2004, may testify about her employment relationship with Mr. Checka, his demeanor and character, the demeanor and character of Mr. Alene and the repeated patterns of behavior of Mr. Alene toward Mr. Checka, herself and many other employees in the store, none of which she would characterize as serious but rather light teasing. Plaintiff anticipates Ms. Persaud's testimony will last thirty (30) minutes.

Plaintiff reserves the right to call any of the persons listed by Defendant on its List of Witnesses and to possibly call rebuttal witnesses, should the occasion or need arise.

<u>Defendant's Witnesses</u>

Defendant expects to call the following individuals as witnesses:

    A.    Scott Zavinski
            7701 Bogey Place
            Glen Allen, Virginia 23059
            804.515.0772

Defendant anticipates that Mr. Zavinski will testify regarding the investigation of the February 5, 2005 incident between Plaintiff and Ashenafi Legasse Alene (hereinafter "Ashenafi Alene" or "Mr. Alene") at Store 3845 and Plaintiff's subsequent termination. Defendant anticipates that Mr. Zavinski will also testify regarding the investigation of the June 15, 2004 incident between Steve Obidike and Angela Nwosu at Store 2653 and Mr. Obidike's subsequent suspension. Defendant anticipates that Mr. Zavinski will also testify regarding Defendant's policies regarding discrimination, harassment and workplace violence. Defendant anticipates that Mr. Zavinski's testimony will last three (3) hours.

    B.    Bill Jackson
            c/o Defendant's Counsel

Defendant anticipates that Mr. Jackson will testify regarding the investigation of the February 5, 2005 incident between Plaintiff and Ashenafi Alene at Store 3845 and Plaintiff's subsequent termination. Defendant anticipates that Mr. Jackson will also testify regarding the June 15, 2004 incident between Steve Obidike and Angela Nwosu at Store 2653 and Mr. Obidike's subsequent suspension. Defendant anticipates that Mr. Jackson will also testify regarding Defendant's policies regarding discrimination, harassment and workplace violence. Defendant anticipates that Mr. Jackson's testimony will last one (1) hour.

Defendant may call the following individuals as witnesses should the need arise:

A.    Wayne LeClair
      431 Woodland Drive
      Dillsburg, PA 17019
      717.502.8179

Defendant anticipates that Mr. LeClair will testify regarding the investigation of the February 5, 2005 incident between Plaintiff and Ashenafi Alene at Store 3845 and Plaintiff's subsequent termination.    Defendant anticipates that Mr. LeClair will also testify regarding the June 15, 2004 incident between Steve Obidike and Angela Nwosu at Store 2653 and Mr. Obidike's subsequent suspension.    Defendant anticipates that Mr. LeClair will also testify regarding Defendant's policies regarding discrimination, harassment and workplace violence.    Defendant anticipates that Mr. LeClair's testimony will last thirty (30) minutes.

B.    Stephan Komm
      802 Mackenzie Drive
      Maryville, TN 37804
      865.981.1503

Defendant anticipates that Mr. Komm will testify regarding the investigation of the February 5, 2005 incident between Plaintiff and Ashenafi Alene at Store 3845. Defendant anticipates that Mr. Komm will also testify regarding Plaintiff's and Mr. Alene's conduct while employed at Store 3845.    Defendant anticipates that Mr. Komm will also testify regarding Defendant's policies regarding discrimination, harassment and workplace violence.    Defendant anticipates that Mr. Komm's testimony will last thirty (30) minutes.

C.    Donna Marie Brooks
      1456 Oak Street, N.W.
      Apt. 201
      Washington, D.C. 20010
      202.387.1079

Defendant anticipates that Ms. Brooks will testify regarding the February 5, 2005 incident between Plaintiff and Ashenafi Alene at Store 3845. Defendant anticipates that Ms. Brooks' testimony will last thirty (30) minutes.

D.    Markund Karnik
      c/o Defendant's Counsel

Defendant anticipates that Mr. Karnik will testify regarding the February 5, 2005 incident between Plaintiff and Ashenafi Alene at Store 3845. Defendant anticipates that Mr. Karnik's testimony will last thirty (30) minutes.

E.    David Christopher Green
      c/o Defendant's Counsel

Defendant anticipates that Mr. Green will testify regarding the February 5, 2005 incident between Plaintiff and Ashenafi Alene at Store 3845. Defendant anticipates that Mr. Green's testimony will last thirty (30) minutes.

F.    Tonya Chatman
      c/o Defendant's Counsel

Defendant anticipates that Ms. Chatman will testify regarding the February 5, 2005 incident between Plaintiff and Ashenafi Alene at Store 3845. Defendant anticipates that Ms. Chatman's testimony will last thirty (30) minutes.

G.   Shakia Carmichael
     2620 16th Street, NW
     Apt. 403
     Washington, D.C. 20009
     202.302.6175

Defendant anticipates that Ms. Carmichael will testify regarding the February 5, 2005 incident between Plaintiff and Ashenafi Alene at Store 3845. Defendant anticipates that Ms. Carmichael's testimony will last thirty (30) minutes.

H.   Anand Shah
     c/o Defendant's Counsel

Defendant anticipates that Mr. Shah will testify regarding the February 5, 2005 incident between Plaintiff and Ashenafi Alene at Store 3845. Defendant anticipates that Mr. Shah's testimony will last thirty (30) minutes.

I.   Cliff Wetsel
     c/o Defendant's Counsel

Defendant anticipates that Mr. Wetsel will testify regarding the investigation of the June 15, 2004 incident between Steve Obidike and Angela Nwosu at Store 2653 and Mr. Obidike's subsequent suspension. Defendant anticipates that Mr. Wetsel's testimony will last thirty (30) minutes.

J.   Mark Dryden
     c/o Defendant's Counsel

Defendant anticipates that Mr. Dryden will testify regarding the investigation of the June 15, 2004 incident between Steve Obidike and Angela Nwosu at Store 2653 and Mr. Obidike's subsequent suspension. Defendant anticipates that Mr. Dryden will also testify regarding Defendant's policies regarding discrimination, harassment and workplace violence. Defendant anticipates that Mr. Dryden's testimony will last thirty (30) minutes.

18

Defendant reserves the right to call any of the persons listed by Plaintiff on his List of Witnesses and to call rebuttal witnesses, should the occasion or need arise.

**6.     Exhibit List**

Plaintiff's Exhibits

    1.     Michael Checka Statement dated February 9, 2005.

    2.     Norman Collins sworn statement dated May 20, 2005

    3.     Harold Vizian sworn statement dated June 9, 2005

    4.     David Christopher Green sworn statement dated March 17, 2005

    5.     Wendy Brown sworn statement dated March 3, 2005.

    6.     David Green statement  (Defendant's Exhibit 12.)

    7.     Scott Zavinski notes re Harold Vizian interviews (Defendant's Exhibit 15)

    8.     Scott Zavinski notes re Stacia Martin interview (Defendant's Exhibit 20)

    9.     Superior Court No-Paper Notice (Defendant's Exhibit 24)

    10.    Robert Condon letter of March 9, 2005. (Defendant's Exhibit 26)

    11.    Wayne LeClair letter of March 31, 2005. (Defendant's Exhibit 27)

    12.    Robert Condon letter of May 24, 2005 forwarding Norman Collins Declaration (Defendant's Exhibit 28)

    13.    E-Mail chain regarding Norman Collins (Defendant's Exhibit 29)

    14.    Robert Condon letter of June 9, 2005,  forwarding Harold Vizian Declaration (Defendant's Exhibit 30)

    15.    Scott Zavinski's notes of interview of Norman Collins (Defendant's Exhibit 31)

    16.    Wayne LeClair letter of August 10, 2005. (Defendant's Exhibit 32)

17.    Wayne LeClair letter of December 8, 2005. (Defendant's Exhibit 33)

18.    Checka Affidavit (Defendant's Exhibit 34)

19.    Checka Rebuttals (Defendant's Exhibit 38)

20.    Scott Zavinski's notes re interview with S. Carmichel (Defendant's Exhibit 16)

21.    Reports of Scott Zavinski regarding the investigation into the Steve Obidike incident in June 2004 (D-00196 – D-00236)

22.    Checka 2004 Federal Tax Return (Defendant's Exhibit 42)

23.    Checka 2005 Federal Tax Return (Defendant's Exhibit 43)

24.    Checka 2006 Federal Tax Return (Defendant's Exhibit 44)

Plaintiff reserves the right to utilize as Exhibits in Plaintiff's case any admissible documents designated by Defendant as Exhibits.

<u>Defendant's Exhibits</u>

1.    Consent Order (D-00032 – D-00053)

2.    1/26/01 License Letter (Exhibit 3 to Checka Deposition)

3.    Employment Application (D-00001 – D-00002)

4.    Memorandum of Understanding (D-00003 – D-00005)

5.    Prescription Department Manager's Duties (D-00036 – D-00037

6.    Pharmacist Job Description (Exhibit 7 to Checka Deposition)

7.    Pharmacy Manager Job Description (D-00237 – D00239)

8.    Associate Atlas (D-00241 – D-00299)

9.    Workplace Violence Policy (Exhibit 16 to Checka Deposition)

10.    Michael Checka Statement 2/9/05 (D-00085 – D-00088)

11.    Scott Zavinski notes (D-00092 – D-00094)

12.    David Green Statement (D-00095 – D-00096)

13.    David Green Declaration (Plaintiff's Document Production)

14.    Scott Zavinski notes of 2/10/05 Tonya Chatman interview (D-00097 – D-00099)

15.    Scott Zavinski notes of 2/10/05 and 2/15/05 Harold Vizian interviews (D-00100 – D-00101)

16.    Scott Zavinski notes of 2/10/05 Shakia Carmichael interview (D-00105)

17.    Donna Marie Brooks statement, 2/10/05 (D-00106 – D-00107)

18.    Steven Komm statement, 2/08/05 (D-00112)

19.    Alezel Rowe statement, 2/10/05 (D-00111)

20.    Scott Zavinski notes of 2/09/05 Stacia Martin interview (D-00108 – D-00110)

21.    Zavinski notes of 2/15/05 Ashenafi Alene interview (D-00102 – D00104)

22.    Zavinski notes of 4/1/05 Markund Karnik interview (D-00113)

23.    Police Incident Report (D-00192 – D-00195)

24.    Superior Court Notice (Exhibit 23 to Checka Deposition)

25.    Citation to Appear In Court (D-00091)

26.    Robert Condon letter, 3/9/2005 (D-00176 – D-00177)

27.    Wayne LeClair letter, 3/31/2005 (D-00135)

28.    Robert Condon letter, 5/24/2005, attaching Declaration of Norman Collins (D-00171 – D-00172)

29.    E-mail chain re Norman Collins (D-00138, D-00141 – D-00143)

30.    Robert Condon letter, 6/9/2005, attaching Declaration of Harold Vizian
       (D-00163 – D-00165)

31.    Scott Zavinski notes of 7/13/2005 interview with Norman Collins (D-
       00139 – D-00140)

32.    Wayne LeClair letter, 8/10/2005 (D-00153 – D-00154)

33.    Wayne LeClair letter, 12/8/2005 (D-00149)

34.    Checka Affidavit (Exhibit 18 to Checka Deposition)

35.    Intake Questions (Exhibit 25 to Checka Deposition)

36.    Complaint Form (Exhibit 26 to Checka Deposition)

37.    Charge of Discrimination (Exhibit 24 to Checka Deposition)

38.    Checka Rebuttals (Exhibit 19 to Checka Deposition)

39.    Letter of Determination (Exhibit 27 to Checka Deposition)

40.    EEOC Dismissal and Notice of Rights (Exhibit 28 to Checka Deposition)

41.    Amended Complaint (Exhibit 1 to Checka Deposition)

42.    Michael Checka 2004 tax return (Exhibit 30 to Checka Deposition)

43.    Michael Checka 2005 tax return (Exhibit 31 to Checka Deposition)

44.    Michael Checka 2006 tax return (Exhibit 32 to Checka Deposition)

Defendant reserves the right to utilize as Exhibits case any admissible documents
designated by Plaintiff as Exhibits

### 7.  Deposition Testimony

Plaintiff

Plaintiff does not designate any deposition testimony for admission at trial at this time.  Plaintiff reserves the right to use deposition testimony to rebut any effort by Defendant to impeach a witness by use of that witness's deposition testimony.

Defendant

Defendant does not designate any deposition testimony for admission at trial at this time.  Defendant reserves the right to use the transcript of Plaintiff's deposition for impeachment purposes.

### 8.  Relief Sought

Plaintiff

Monetary damages in the form of lost wages from the time of his termination until he was fully reemployed, plus attorney's fees and costs.

Defendant

Defendant does not seek damages against Plaintiff, but reserves the right to seek costs and attorney's fees at the conclusion of the case.

### 9.  Pending Motions

Currently pending before the Court is Defendant's Motion for Summary Judgment. This Motion has been fully briefed.  Defendant filed its Motion on November 1, 2007.  Plaintiff's filed his Opposition to Defendant's Motion on November 16, 2006.  Defendant filed its Reply to Plaintiff's Opposition on  November 29, 2007.

10. **Demonstrative Evidence, Physical Evidence, Videotapes**

Plaintiff

Plaintiff would like to reserve the right to utilize charts or other demonstrative exhibits, including enlargement of designated exhibits.

Defendant

Defendant reserves the right to use blowups of admissible evidence.

11. **Jury Cases**

a.    A list of Plaintiff's requested voir dire questions, showing those agreed upon and not agreed upon, is attached hereto as Exhibit 1

b.    A list of Defendant's requested voir dire questions, showing those agreed upon and not agreed upon, is attached hereto as Exhibit 2.

c.    A list of Plaintiff's proposed standard and non-standard jury instructions is attached hereto as Exhibit 3.

d.    A list of Defendant's proposed standard and non-standard jury instructions is attached hereto as Exhibit 4.

e.    Plaintiff's proposed verdict form, including any special interrogatories, is attached hereto as Exhibit 5.

f.    Defendant's proposed verdict form, including any special interrogatories, is attached hereto as Exhibit 6.

12. **Estimated Length of Trial**

The parties estimate that a trial in this matter would last three (3) days.

13. **Miscellaneous Matters**

None.

Dated: December 7, 2007

Respectfully submitted,

_____ /s/

Robert F. Condon
818 18th Street, N.W., Suite 410
Washington, D.C. 20006
(202) 861-0070

Counsel for Plaintiff,
Michael P. Checka

and

_____ /s/

Katherine E. Bierma Pregel
D.C. Bar No. 486615
Littler Mendelson, P.C.
1150 17th Street, N.W., Suite 900
Washington, D.C. 20036
(202) 842-3400
(202) 842-0011 (facsimile)
kbpregel@littler.com

Theodore A. Schroeder
(Admitted *Pro Hac Vice*)
Littler Mendelson, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, Pennsylvania 15222
(412) 201-7600 (telephone)
(412) 774-1959 (facsimile)
tschroeder@littler.com

Counsel for Defendant,
Rite Aid of Washington, D.C., Inc.

The foregoing Joint Pretrial Statement, as revised at the Pretrial Conference in the presence of counsel, shall stand as the Pretrial Order in this case.


_____          _____
DATE                                Hon. Gladys Kessler
                                    U.S. District Judge

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL P. CHECKA, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:07CV00099 (GK) |
| ) | Judge Gladys Kessler |
| v. ) | |
| ) | Next Scheduled Deadline: |
| ) | Pretrial Conference |
| ) | December 18, 2007 |
| RITE AID OF ) | |
| WASHINGTON, D.C., INC., ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS  (EXHIBIT 1)

Plaintiff accepts the proposed Voir Dire Questions of Defendant as set forth in Exhibit 2, except for Voir Dire Question No. 30 to which he objects, and except  to request that Question No. 14 be amended to include the names of Steve Obidike, Harold D. Vizian and Sherry Persaud.  Other than the above, Plaintiff has no additional proposed Voir Dire Questions at this time.

Dated: December 7, 2007                    Respectfully submitted,


                                    _____/s/_____
                                    Robert F. Condon
                                    818 18th Street, N.W., Suite 410
                                    Washington, D.C. 20006
                                    (202) 861-0070
                                    Counsel for Plaintiff

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL P. CHECKA,                         )
                                           )
                    Plaintiff,             )          Case No. 1:07CV00099 (GK)
                                           )          Judge Gladys Kessler
v.                                         )
                                           )          Next Scheduled Deadline:
                                           )          Pretrial Conference
                                           )          December 18, 2007
RITE AID OF                                )
WASHINGTON, D.C., INC.,                    )
                                           )
                    Defendant.             )
                                           )

## DEFENDANT'S PROPOSED VOIR DIRE  (EXHIBIT 2)

Pursuant to Rule 47(a) of the Federal Rules of Civil Procedure, Defendant Rite Aid of Washington, D.C., Inc., through the undersigned counsel, hereby submits the following proposed voir dire:

1.      Does anyone have any difficulty hearing, seeing or paying close attention to detail for a long time?

2.      Does anyone have any other physical or mental condition that would make it difficult for you to pay attention to the evidence?

3.      Is there any reason the subject matter in this case would hamper your ability to render a fair and impartial verdict?

4.      Does anyone know any of the attorneys in this case?

      a.      Robert F. Condon?  If so, how?

      b.      Theodore A. Schroeder?  If so, how?

      c.      Katherine E. Bierma Pregel?  If so, how?

      d.      anyone who works for the law firm of Artabane & Belden? If so, how?

      e.      anyone who works for the law firm of Littler Mendelson, P.C.? If so, how?

5.      Does anyone know the plaintiff, Michael P. Checka, or any member of his immediate family? If so, how?

6.      Does anyone work for Rite Aid?

      a.      If so, in what capacity?

      b.      For how long?

7.      Has anyone ever worked for Rite Aid?

      a.      If so, in what capacity?

      b.      For how long?

      c.      For what reason did you leave the employ of that Company?

8.      Does anyone have any relatives or close friends who work or worked for Rite Aid?

      a.      If so, who?

      b.      What relation does that person have to you?

      c.      In what capacity was that person employed by that Company?

      d.      For how long?

      e.      For what reason did that person leave the employ of that Company?

9.      Has anyone ever had a negative experience as a client or customer of Rite Aid?

      a.      What was the negative experience?

      b.      When did it occur?

10.      Does anyone own stock in Rite Aid?

      a.      How much?

b.    Has anyone owned that stock in the past?

c.    If so, why do you not own the stock any longer?

11.    Is anyone a judge, lawyer, paralegal, or legal secretary?  Would your work make it difficult for you to be fair and impartial?

12.    Does anyone have a relative or close friend who is a judge, lawyer, paralegal, or legal secretary?  Would that relationship make it difficult for you to be fair and impartial?

13.    Does anyone or a member of your immediate family work or have special training in personnel matters or human resources?  Would your work make it difficult for you to be fair and impartial?

14.    Does anyone know any of these individuals, who may be witnesses or the subjects of testimony in this case:  Scott Zavinski, Wayne LeClair, Bill Jackson, Stephan Komm, Ashenafi Alene, Donna Marie Brooks, Markund Karnik, David Christopher Green, Tonya Chatman, Shakia Carmichael, Anand Shah, Clif Wetsel, Mark Dryden, Norman Collins, or Wendy Brown.

15.    Are you aware of any facts which may cause you to be biased for or against any of the individuals I have identified who may be witnesses or the subject of testimony in this case?

16.    Does anyone have any prior knowledge of this case?

17.    Has anyone developed any preconceived opinions or ideas with respect to the allegations in this case?

18.    Has anyone had any prior jury duty?

    a.    What type of case?

    b.    Which court?

    c.    Did anything occur during the trial of that case that would tend to prejudice you in this matter?

19.    Has anyone ever been a party to a lawsuit?

    a.    Plaintiff or Defendant?

    b.    What type of case?

    c.    Which court?

20.    Has anyone ever been involved in any way in an employment discrimination case?

    a.    When?

    b.    How were you involved?

    c.    Which court?

21.    Under our system of justice, a very important principle is that large organizations like the Defendant in this case are to be treated no better or no worse than individuals merely because they are corporations. If you have a problem accepting that, then you owe it to everyone in the courtroom to say so now. Does anyone have any problem accepting that?

22.    Have any of you ever felt that you were discriminated against compared to others in your workplace because of your race, sex or age?

    a.    When?

    b.    Where?

    c.    What happened?

    d.    Why did you feel that the decision was discriminatory?

    e.    Did you complain?

4

f.      Were you satisfied with the result?

g.      Would this incident influence your verdict at all in this case?

23.    Have any of you ever been terminated or lost your job?

a.      When?

b.      Where?

c.      What happened?

d.      Did you feel that the decision was unfair?

e.      Did you feel that the decision was in any way discriminatory?

f.      Did you complain?

g.      Were you satisfied with the result?

h.      Would this incident influence your verdict at all in this case?

24.    Have any of you ever had a spouse, close family member or friend that has been discriminated against in his or her workplace?

a.      When?

b.      Where?

c.      What happened?

d.      Would this incident influence your verdict at all in this case?

25.    Have any of you ever had a spouse, close family member or friend that has been terminated or lost their job?

a.      When?

b.      Where?

c.      What happened?

d.      Would this incident influence your verdict at all in this case?

5

26.    Have any of you ever observed what you felt was discrimination in your workplace?

    a.    Where?

    b.    Who engaged in the discrimination?

    c.    What was involved?

27.    Have any of you ever filed any employment-related complaints with any government agency?

    a.    or with your Union?

    b.    When?

    c.    What was involved?

28.    Have any of you ever had a spouse, close family member or friend file an employment-related complaint with any government agency?

    a.    Or with his/her Union?

    b.    Who?

    c.    Where?

    d.    What was involved?

29.    Like any dispute, there are two sides to this case. Here Mr. Checka will present his case first because he has the burden of proof. Defendant will present its case next. Can all of you keep an open mind until you have heard all the evidence and have been instructed on the law by me at the end of the case?

30.    Just because the Defendant in this case was sued does not mean that it did anything wrong. If the evidence is such that Mr. Checka does not prove his case, would any of you have any difficulty returning a verdict for Defendant with no compensation to Mr. Checka?

31.    Is there anything else that any of you believe might make it difficult for you to be fair and impartial, whether I have covered the subject or not?

32.    Is there any reason any of you feel that you could not follow the law that I will instruct you on?

The parties agree on all of the above Voir Dire questions, except that Plaintiff objects to Question No. 30 and requests that Question No. 14 be amended to include the names of Steve Obidike, Harold D. Vizian and Sherry Persaud.

Dated:  December 7, 2007                     Respectfully submitted,


                                             LITTLER MENDELSON, P.C.


                                             _____/s/_____
                                             Katherine E. Bierma Pregel
                                             D.C. Bar No. 486615
                                             1150 17th Street, N.W.
                                             Suite 900
                                             Washington, D.C.  20036
                                             (202) 842-3400  Telephone
                                             (202) 842-0011  Facsimile
                                             kbpregel@littler.com

                                             Theodore A. Schroeder
                                             (Admitted *Pro Hac Vice*)
                                             625 Liberty Avenue
                                             26th Floor
                                             Pittsburgh, Pennsylvania 15222
                                             (412) 201-7600  Telephone
                                             (412) 774-1959  Facsimile
                                             tschroeder@littler.com

                                             Counsel for Defendant,
                                             Rite Aid of Washington, D.C., Inc.

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MICHAEL P. CHECKA,** ) | |
| ) | |
| **Plaintiff,** ) | **Case No. 1:07CV00099 (GK)** |
| ) | **Judge Gladys Kessler** |
| **v.** ) | |
| ) | **Next Scheduled Deadline:** |
| ) | **Pretrial Conference** |
| ) | **December 18, 2007** |
| **RITE AID OF** ) | |
| **WASHINGTON, D.C., INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS  (EXHIBIT 3)

Standard Instructions:

Plaintiff, Michael P. Checka, requests the following Standardized Civil Jury

Instructions from the Young Lawyers Section of the Bar Association of the District of

Columbia:

*1.01 – Function of the Court

*1.02 – Function of the Jury

*1.03 – Significance of Party Designations

1.07 – Court's Commenting on the Evidence

1.09 – Jury Not to Take Cue from Judge

*1.10 – Rulings on Objections

1.12 – Equality of Litigants – Individuals

*2.01 – Evidence in the Case

2.03 – Inferences

*2.04 – Inadmissible and Stricken Evidence

*2.05 – Statements of Counsel

*2.08 – Burden of Proof

2.10 – Direct and Circumstantial Evidence

*3.01 –Jury to Determine Credibility of Witnesses

*3.02 – Number of Witnesses

*3.10 – Charts and Summaries

12.01 – Damages – Jury to Award

*12.03 – Burden of Proof – Speculative Damages

*12.07 – Duty to Mitigate Damages

* denotes those instructions agreed upon by the parties.

## Non-Standard Instructions

Plaintiff requests the following non-standard instructions to the jury:

1.    **Disparate Treatment**

In order for Plaintiff to establish his claim against Defendant, Plaintiff has the burden of proving by a preponderance of the evidence that Defendant's actions were motivated by Plaintiff's race.

Plaintiff must prove by a preponderance of the evidence that Defendant knowingly discriminated against Plaintiff, that is, Plaintiff's race must be proven to have been a motivating factor in Defendant's decision to terminate his employment.

In showing that Plaintiff's race, white, was a motivating factor, Plaintiff is not required to prove that his race was the sole motivating factor or even the primary motivation for the Defendant's decision.  Plaintiff need only prove that race played a

motivating part in Defendant's decision even though other factors may have also motivated Defendant. Authority: O'Malley, Grenig & Lee, Federal Jury Practice Instruction, §171.20; 42 U.S.C. §2000e-2(m).

      2.    **Prima Facie Case**

Plaintiff has the burden of establishing a *prima facie* claim of discrimination. Plaintiff must show that 1) He is a member of a protected class; 2) he suffered an adverse employment action; and 3) the adverse action gives rise to an inference of discrimination.

This is a case involving a claim of reverse discrimination and, therefore, the first prong of the *prima facie* case test is modified. Since there is nothing inherently suspicious about an employer's terminating a majority-group employee, such a plaintiff alleging Title VII discrimination must show additional background circumstances that support his claim that defendant discriminated against him. The "background circumstances" requirement substitutes for the standard test of a minority plaintiff showing only that he is a member of a racial minority.

The evidence as to "background circumstances" can come in one of two categories, the first of which is that this particular employer has some reason or inclination to discriminate against majority group employees generally, such as an affirmative action plan or other pressure to promote minority class members based on race. The other category is evidence indicating that there is something "fishy" about the facts of this case that raises an inference of discrimination.

In this case, there has been no evidence indicating that this particular employer has an established pattern of discriminating against majority members generally, but Plaintiff has alleged and attempted to prove that there is something "fishy" about the

decision to terminate in view of the fact the treatment afforded to him was disparate from that of another pharmacist, a member of a minority class, similarly situated, who was accused of an assault against a minority female employee and was reinstated without further penalty shortly after the criminal charges brought against him were "no-papered" by the Superior Court authorities.

If you find that Plaintiff has established the "background circumstances" by a preponderance of the evidence, you must find for the plaintiff.

Authority: *George v. Leavitt*, 407 F. 3d 405 (D.C. Cir. 2005).

3.    **Effect of Instruction as to Damages**

Plaintiff accepts Defendant's proposed instruction on this subject.

4.    **Damages – Back Pay**

Plaintiff accepts Defendant's proposed instruction on this subject.

Dated: December 7, 2007                          Respectfully submitted,


                                                  /s/
                                        _____
                                        Robert F. Condon
                                        818 18th Street, N.W., Suite 410
                                        Washington, D.C. 20006
                                        (202) 861-0070
                                        Counsel for Plaintiff

# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MICHAEL P. CHECKA,** ) | |
| ) | |
| **Plaintiff,** ) | **Case No. 1:07CV00099 (GK)** |
| ) | **Judge Gladys Kessler** |
| **v.** ) | |
| ) | **Next Scheduled Deadline:** |
| ) | **Pretrial Conference** |
| ) | **December 18, 2007** |
| **RITE AID OF** ) | |
| **WASHINGTON, D.C., INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**DEFENDANT'S PROPOSED JURY INSTRUCTIONS (EXHIBIT 4)**

**Standard Jury Instructions**

Defendant Rite Aid of Washington, D.C., Inc. requests the following Standardized Civil Jury Instructions from the Young Lawyers Section of the Bar Association of the District of Columbia be read to the jury at the start of the trial:

   *1.01 – Function of the Court

   *1.02 – Function of the Jury

   *1.03 – Significance of Party Designations (with use of the [will hear] bracketed language)

   *1.10 – Rulings on Objections (with changes in some verb tense from past to future)

   1.11 – Equality of Litigants – Corporations

   *2.01 – Evidence in the Case

   *2.05 – Statements of Counsel

Defendant requests the following Standardized Civil Jury Instructions from the Young Lawyers Section of the Bar Association of the District of Columbia be read to the jury at the close of the case:

1.05 – Attitude and Conduct of Jurors

*2.04 – Inadmissible and Stricken Evidence (with use of the bracketed language)

*2.08 – Burden of Proof (with use of the bracketed language)

*3.01 – Jury to Determine Credibility of Witnesses

*3.02 – Number of Witnesses

3.08 – Impeachment by Prior Inconsistent Statements (with use of bracketed language)

*3.10 – Charts and Summaries (with use of the [lawyers] bracketed language)

*12.03 – Burden of Proof – Speculative Damages (with use of [his], [harm], and [injury] bracketed language)

*12.07 – Duty to Mitigate Damages (with use of the bracketed language)

* denotes those instructions agreed upon by the parties.

## Non-Standard Jury Instructions

Defendant requests the following non-standard jury instruction be read to the jury at the start of the trial:

### (1)    At-Will Employment

The parties have stipulated that the Plaintiff was an at-will employee while employed by Defendant.    That means, the Plaintiff did not have a contract of

2

employment, and that Defendant had the right to terminate Plaintiff for any reason other than an unlawful one.  Absent an unlawful basis, Defendant had the right to terminate Plaintiff at any time for any reason, or for no reason at all.

Authority: Adams v. George W. Cochran & Co., 597 A.2d 28, 30 (D.C. 1991).

### (2)    Disparate Treatment

In order for Plaintiff to establish his claim against Defendant, Plaintiff has the burden of proving by a preponderance of the evidence that Defendant's actions were motivated by Plaintiff's race.

Plaintiff must prove that Defendant intentionally discriminated against Plaintiff, that is, Plaintiff's race must be proven to have been a motivating factor in Defendant's decision to terminate Plaintiff's employment.

The mere fact that Plaintiff is white and was terminated is not sufficient, in an of itself, to establish Plaintiff's claim under the law.

In showing that Plaintiff's race was a motivating factor, Plaintiff is not required to prove that Plaintiff's race was the sole motivation or even the primary motivation for the Defendant's decision.  Plaintiff need only prove that race played a motivating part in Defendant's decision even though other factors may have also motivated Defendant.

However, Defendant claims that even if race is found to have been a motivating factor in Defendant's decision, Defendant would have taken the same action concerning Plaintiff in the absence of the unlawful motive.

Authority: 3C O'Malley, Grenig & Lee, Federal Jury Practice and Instruction, §171.20 (2001).

### (3)    *Prima Facie* Case

In order for Plaintiff to establish his claim against Defendant, Plaintiff has the

3

burden of establishing a *prima facie* claim of discrimination.  To establish a *prima facie* case of discrimination based on race, a plaintiff must establish that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.

In the context of a reverse discrimination claim, the first prong of the *prima facie* case is modified.  Because there is nothing inherently suspicious about an employer's decision to terminate a majority-group employee, a majority-group plaintiff alleging Title VII discrimination must show additional background circumstances that support his claim that the defendant discriminated against him.  The "background circumstances" requirement substitutes for the minority plaintiff's burden to show that he is a member of a racial minority.

Two general categories of evidence constitute "background circumstances."  The first includes evidence indicating that a particular employer has some reason or inclination to discriminate against a majority group plaintiff, such as an affirmative action plan or other pressure to promote particular minorities based on race.  The other category is evidence indicating that there is something "fishy" about the facts of the case at hand that raises an inference of discrimination.  If you find that Plaintiff has failed to prove these background circumstances by a preponderance of the evidence, you must find in favor of Defendant.

Authority: George v. Leavitt, 407 F.3d 405 (D.C. Cir. 2005); Harding v. Gray, 9 F.3d 150 (D.C. Cir. 1993); Parker v. Balt. & Ohio R.R., 652 F.2d 1012 (D.C. Cir. 1981).

### (4)    Same Decision

If you determine that Plaintiff proved that his race was a factor motivating or playing a part in Defendant's decision to terminate Plaintiff, then you must find for the

Plaintiff, unless you determine that Defendant showed that it would have reached the same decision regardless of Plaintiff's race.

Authority: 3C O'Malley, Grenig & Lee, Federal Jury Practice and Instruction, §171.76 (2001).

### (5)    Legitimate, Nondiscriminatory Reasons for Employment Decision

You must also consider any legitimate, nondiscriminatory reason or explanation stated by Defendant for its decision. If you determine that Defendant has stated such a reason, then you must decide in favor of defendant, unless Plaintiff proves by a preponderance of the evidence that the stated reason was not the true reason but was only a pretext or excuse for Defendant's discriminating against Plaintiff because of Plaintiff's race.

Authority: 3C O'Malley, Grenig & Lee, Federal Jury Practice and Instruction, §171.77 (2001).

Defendant requests the following non-standard jury instructions be read to the jury at the close of the case:

### (6)    Effect of Instructions as to Damages

The fact that I have instructed you on the proper measure of damages should not be considered as an indication of any views of mine as to which party is entitled to your verdict in this case. Instructions as to the measure of damages are given only for your guidance, in the event that you should find in favor of Plaintiff on the question of liability, by a preponderance of evidence and in accord with the other instructions.

Authority: 3 Devitt, Blackmar & Wolff, Federal Jury Practice and Instruction, §74.02 (1987).

**(7)    Damages – Backpay**

I will now give you instructions on how to calculate damages. The fact that I do so does not mean that I think you should award any. Whether to award any is entirely for you to decide. You may not award damages based simply on speculation or guesswork. Any award must fairly compensate Plaintiff for his injury but must have a basis in the evidence and be reasonable in the light of that evidence.

If you find Defendant unlawfully terminated Plaintiff based on his race, Plaintiff is entitled to recover an amount that will reasonably compensate him for the loss and damage, if any, he has suffered. Plaintiff is not entitled to recover any damages for conduct by Defendant that did not cause harm to Plaintiff, nor is Plaintiff entitled to recover damages that are not the result of unlawful conduct by Defendant.

The damages for which Plaintiff could be compensated, should you find he was unlawfully terminated, would be the difference between the amount of wages and benefits he would have received if Defendant had not terminated him and the amount of wages and benefits Plaintiff actually earned. This amount would consist of the wages and benefits Plaintiff would have received from the date he was terminated up until the time of trial, less any interim earnings and benefits Plaintiff received from subsequent employment. Backpay is calculated on an annual basis, so that you must first calculate Plaintiff's lost earnings and benefits for the first year following his termination, and then each subsequent year after that. Any year in which Plaintiff earned more than he would have earned had he remained employed by Defendant results in zero backpay liability.

Authority: Hartman v. Duffey, 8 F. Supp. 2d 1 (D.D.C. 1998); Berger v. Iron Workers, 1994 U.S. Dist. LEXIS 5342, *40-75; Green v. U.S. Steel Corp., 640 F. Supp. 1521, 1553 (E.D. Pa. 1986), aff'd in part, rev'd in part, 843 F.2d 1511 (3d Cir. 1988), vacated on other grounds, 490 U.S. 1103 (1989).

**(8)    Mitigation of Damages**

Plaintiff must make every reasonable effort to minimize or reduce Plaintiff's damages for loss of compensation by seeking employment. This is referred to as "mitigation of damages." Defendant must prove by a preponderance of the evidence that Plaintiff failed to mitigate his damages for loss of compensation.

If you determine Plaintiff is entitled to lost compensation, you must reduce the loss by:

1.    what Plaintiff earned and

2.    what Plaintiff could have earned by reasonable effort during the period from Plaintiff's termination until the date of trial.

Plaintiff must accept employment that is "of a like nature." In determining whether employment is 'of a like nature," you may consider:

1.    the type of work,

2.    the hours worked,

3.    the compensation,

4.    the job security,

5.    the working conditions, and

6.    other conditions of employment.

You must decide whether Plaintiff acted reasonably in not seeking or accepting a particular job. If you determine Plaintiff did not make reasonable efforts to obtain another similar job, you must decide whether any damages resulted from Plaintiff's failure to do so.

7

You must not compensate Plaintiff for any portion of Plaintiff's loss of compensation resulting from Plaintiff's failure to make reasonable efforts to reduce his loss of compensation.

Authority: 3C O'Malley, Grenig & Lee, Federal Jury Practice and Instruction, §171.95 (2001).

(9)     Defendant also requests an instruction regarding any factual stipulations upon which it is able to agree with Plaintiff.   Upon such agreement, Defendant will submit a proposed instruction.

Dated:  December 7, 2007

Respectfully submitted,

LITTLER MENDELSON, P.C.

_____/s/_____

Katherine E. Bierma Pregel
D.C. Bar No. 486615
1150 17th Street, N.W.
Suite 900
Washington, D.C.  20036
(202) 842-3400  Telephone
(202) 842-0011  Facsimile
kbpregel@littler.com

Theodore A. Schroeder
(Admitted *Pro Hac Vice*)
625 Liberty Avenue, 26th Floor
Pittsburgh, Pennsylvania 15222
(412) 201-7600  Telephone
(412) 774-1959  Facsimile
tschroeder@littler.com

Counsel for Defendant,
Rite Aid of Washington, D.C., Inc.

# EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MICHAEL P. CHECKA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:07CV00099 (GK) |
| | ) | Judge Gladys Kessler |
| v. | ) | |
| | ) | Next Scheduled Deadline: |
| | ) | Pretrial Conference |
| | ) | December 18, 2007 |
| RITE AID OF | ) | |
| WASHINGTON, D.C., INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S PROPOSED VERDICT FORM  (EXHIBIT 5)

Plaintiff requests the following general verdict form be presented to the jury:

We find for the Plaintiff against the Defendant on the issue of liability. _____.

We award to the Plaintiff damages in the amount of $_____.
(This line is to be filled out only if you find in favor of Plaintiff on liability).

We find for the Defendant against the Plaintiff on the issue of liability.


Dated: December 7, 2007                    Respectfully submitted,


                                           _____/s/_____
                                           Robert F. Condon
                                           818 18th Street, N.W., Suite 410
                                           Washington, D.C. 20006
                                           (202) 861-0070
                                           Counsel for Plaintiff

# EXHIBIT 6

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL P. CHECKA,** ) | |
| ) | |
| **Plaintiff,** ) | **Case No. 1:07CV00099 (GK)** |
| ) | **Judge Gladys Kessler** |
| **v.** ) | |
| ) | **Next Scheduled Deadline:** |
| ) | **Pretrial Conference** |
| ) | **December 18, 2007** |
| **RITE AID OF** ) | |
| **WASHINGTON, D.C., INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>DEFENDANT'S PROPOSED VERDICT FORM  (EXHIBIT 6)</u>

Defendants request that the following special interrogatories be propounded to the jury:

(1)    Do you find from a preponderance of the evidence that Plaintiff's race was a substantial or motivating factor that prompted Defendant to terminate his employment?

**Answer "Yes" or "No"**

Answer: _____

*If you answered "Yes," proceed to the next question.  If you answered "No," you need not proceed any further.*

(2)    Do you find from a preponderance of the evidence that Plaintiff would have been terminated for other reasons even in the absence of consideration of his race?

**Answer "Yes" or "No"**

Answer: _____

*If you answered "Yes," you need not proceed any further.  If you answered "No," proceed to the next question.*

(3)    Do you find that Plaintiff should be awarded damages to compensate for a net loss of wages and benefits to date of trial?

**Answer "Yes" or "No"**

Answer: _____

If your answer is "Yes," what amount of lost wages and benefits, if any, do you award Plaintiff?

$ _____

*If you answered "Yes," proceed to the next question.  If you answered "No," you need not proceed any further.*

(4)    Do you find that Defendants proved, by a preponderance of the evidence, that Plaintiff failed to act as an ordinarily prudent person could or should have acted to avoid or lessen his alleged damages?

**Answer "Yes" or "No"**

Answer: _____

*If you answered "Yes," Plaintiff is not allowed to receive compensation for those damages he could or should have lessened or avoided.  What amount of damages do you find Plaintiff should not receive?*

$ _____

Dated:  December 7, 2007

Respectfully submitted,

LITTLER MENDELSON, P.C.


_____/s/_____
Katherine E. Bierma Pregel
D.C. Bar No. 486615
1150 17th Street, N.W.
Suite 900
Washington, D.C.  20036
(202) 842-3400  Telephone
(202) 842-0011  Facsimile
kbpregel@littler.com


Theodore A. Schroeder
(Admitted *Pro Hac Vice*)
625 Liberty Avenue
26th Floor
Pittsburgh, Pennsylvania 15222
(412) 201-7600  Telephone
(412) 774-1959  Facsimile
tschroeder@littler.com


Counsel for Defendant,
Rite Aid of Washington, D.C., Inc.