UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
MICHAEL P. CHECKA,            )
                              )
            Plaintiff,        )
                              )
      v.                      )      Civil Action No. 07-99 (GK)
                              )
RITE AID OF WASHINGTON, D.C., )
INC.,                         )
                              )
            Defendant.        )
_____)
```

MEMORANDUM OPINION

Plaintiff Michael Checka, a former employee of Rite Aid of Washington, D.C., Inc. ("Rite Aid"), brings this action against Rite Aid pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. This matter is before the Court on Defendant's Motion for Summary Judgment [**Dkt. No. 15**]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Defendant's Motion for Summary Judgment is **granted.**

I.    BACKGROUND[1]

Michael Checka, a white male, was hired as a pharmacist by Rite Aid in 1997. Starting in 1998, he worked at the Rite Aid

_____

[1] Unless otherwise noted, the facts set forth herein are undisputed and drawn from the parties' Statements of Undisputed Material Facts submitted pursuant to Local Civil Rule 7(h).

pharmacy located at 1815 Connecticut Avenue, N.W. in Washington, D.C. In 1999, he was promoted to the position of Pharmacy Manager.

On February 5, 2005, an incident occurred at the pharmacy between Checka and another employee, Ashenafi Legesse Alene. The parties offer two very different versions of what happened that day. Defendant contends that Alene taunted Checka in the front part of the store. Shortly thereafter, Checka went to a storage room at the back of the pharmacy where Alene was already present. Checka allegedly said something to the effect of: "What do you have to say to me now?" Alene had no way to exit the storage room, except through the door that Checka had just come through. Alene began to move towards the back of the room as Checka continued to approach him.

According to Checka, Alene then tripped over some crates and fell down. According to Alene, Checka punched him in the face. Under either version of events, Alene's nose was bleeding and some blood was splattered on Checka's clothing. Checka was arrested by the police, although the United States Attorney's Office later declined to prosecute him.

Rite Aid commenced an investigation regarding this incident, which was conducted by Scott Zavinski, a regional human resources manager. Like Checka, Zavinski is white. Zavinski reported to Rite Aid's Regional Vice President, Bill Jackson, who is also white.

Zavinski interviewed nine employees at the Rite Aid pharmacy where the incident occurred, including Alene.  Alene told Zalinsky that Checka punched him in the face.  A number of other employees told Zavinsky that Alene told them the same thing shortly after the incident occurred.  David Green, a pharmacy intern, told Zavinsky that Checka told him he had lunged at Alene.  Zavinski also interviewed Checka, who claimed that Alene's injury was the result of tripping over boxes in the storage room.  According to Zalinski, Checka admitted to him that the incident was his fault and offered to pay Alene's medical expenses.  Checka admits that he offered to pay the medical expenses, but denies that he told Zalinksi that he was at fault for the incident.

Zavinski discussed the findings of his investigation with Wayne LeClair, Rite Aid's Vice President of Human Resources Administration, who is also white.  Both agreed that Checka had violated Rite Aid's policy prohibiting violent and other inappropriate conduct.  They recommended that Checka be terminated, and Zavinski conveyed this recommendation to Regional Vice President Bill Jackson.  Jackson agreed with the recommendation, and Checka's employment was terminated on February 11, 2005.

Four months later, on June 15, 2004, a separate incident occurred at another Washington, D.C. Rite-Aid pharmacy on Georgia Avenue, N.W.  Chukwuemeka Obidike, an African-American pharmacist, allegedly grabbed Angela Nwosu, a pharmacy technician, by the arm

and then pushed her.  Obidike was also arrested by the police, and the United States Attorney's Office declined to prosecute. Zavinski also conducted Rite-Aid's investigation of this incident, to which there were no other eyewitnesses.  Obidike denied that the incident occurred, and Zavinski did not find any evidence of wrongdoing on his part.

On December 1, 2005, Plaintiff filed a discrimination complaint with the District of Columbia Office of Human Rights ("DCOHR").  On August 28, 2006 DCOHR found no probable cause to believe that Plaintiff had been subjected to disparate treatment on the basis of race.  Plaintiff then filed suit in this Court.

## II.  STANDARD OF REVIEW

Summary judgment may be granted "only if" the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c), as amended December 1, 2007; Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006).  In other words, the moving party must satisfy two requirements: first, demonstrate that there is no "genuine" factual dispute and, second, that if there is it is "material" to the case.  "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Arrington, (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A fact

4

is "material" if it might affect the outcome of the case under the substantive governing law. <u>Liberty Lobby</u>, 477 U.S. at 248.

In its most recent discussion of summary judgment, in <u>Scott v. Harris</u>, __ U.S. __, 127 S. Ct. 1769, 1776 (2007), the Supreme Court said,

> [a]s we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 . . . (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Liberty Lobby</u>, 477 U.S. at 247-48.

However, the Supreme Court has also consistently emphasized that "at the summary judgment stage, the judge's function is not...to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." <u>Liberty Lobby</u>, 477 U.S. at 248, 249. In both <u>Liberty Lobby</u> and <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 150 (2000), the Supreme Court cautioned that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, are jury functions, not those of a judge" deciding a motion for summary judgment. <u>Liberty Lobby</u>, 477 U.S. at 255. In assessing a motion for summary judgment and reviewing the evidence the parties claim they will present, "the

5

Court must draw all reasonable inferences in favor of the non-moving party." <u>Reeves</u>, 530 U.S. at 150. "To survive a motion for summary judgment, the party bearing the burden of proof at trial...must provide evidence showing that there is a triable issue as to an element essential to that party's claim. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)." <u>Arrington</u>, 473 F.3d at 335.[2]

## III. ANALYSIS

### A.    The <u>McDonnell Douglas</u> Burden-Shifting Framework

Claims under Title VII are governed by the burden-shifting framework laid out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Under this framework, the plaintiff must first establish, by a preponderance of the evidence, a <u>prima facie</u> case of discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 802. Once the plaintiff establishes a <u>prima facie</u> case, the defendant must "'produc[e] evidence' that the adverse employment actions were taken 'for a legitimate, non-discriminatory reason.'" <u>Aka v. Washington Hosp. Ctr.</u>, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993)). Once the defendant has done so, "the presumption...raised by the prima facie case is rebutted" and "drops from the case." <u>Id.</u>

_____

[2] It should be noted that a non-movant's affidavit may suffice to defeat a summary judgment motion if the parties' sworn statements are materially different. <u>Greene v. Dalton</u>, 164 F.3d 671, 674-75 (D.C. Cir. 1999); <u>Arrington</u>, 473 F.3d at 337.

(quoting <u>Hicks</u>, 509 U.S. at 507).  For purposes of surviving summary judgment, the plaintiff must then show that a reasonable jury could infer that the proffered legitimate reason was false and that defendant's actions were intended as discrimination from a "combination of (1) the plaintiff's <u>prima facie</u> case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff."  <u>Id.</u> at 1289.

### B.  Plaintiff Has Not Established a <u>Prima Facie</u> Case of Discrimination

In a typical Title VII suit, a plaintiff must establish that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the adverse action gives rise to an inference of discrimination, in order to establish a <u>prima facie</u> case of discrimination.  <u>George v. Leavitt</u>, 407 F.3d 405, 412 (D.C. Cir. 2005).  When the plaintiff is a white male and alleges reverse discrimination, as in this case, the requirement for establishing a <u>prima facie</u> case changes.  <u>Harding v. Gray</u>, 9 F.3d 150, 153 (D.C. Cir. 1993).  Instead of showing that he is a member of a minority group, the plaintiff must show "background circumstances [that] support the suspicion that the defendant is that unusual employer who discriminates against the majority."  <u>Id.</u> (quoting <u>Parker v. Baltimore & Ohio R.R.</u>, 652 F.2d 1012, 1017 (D.C. Cir. 1981)).  "This requirement is not designed to disadvantage the white

plaintiff" but "merely substitutes for the minority plaintiff's burden to show that he is a member of a racial minority." <u>Id.</u>

A plaintiff may satisfy this requirement in one of two ways. First, a plaintiff may produce evidence indicating that his employer had reason or inclination to discriminate against the majority. <u>Mastro v. Potomac Elec. Power Co.</u>, 447 F.3d 843, 851 (D.C. Cir. 2006). Plaintiffs have previously done so by presenting evidence of "political pressure to promote a particular minority because of his race, pressure to promote minorities in general, and proposed affirmative action plans." <u>Id.</u> Second, a plaintiff may show that there is "something 'fishy' about the facts of the case at hand that raises an inference of discrimination." <u>Id.</u> (quoting <u>Harding</u>, 9 F.3d at 153). Evidence that a white plaintiff was given little or no consideration for a position that was given to a minority candidate or that a minority candidate was promoted over four objectively better qualified white candidates has been sufficient to show "something 'fishy'" about the facts of the case. <u>Id.</u> at 851-52.

In this case, Plaintiff has not produced any such evidence. All of the individuals involved in the decision to terminate the Plaintiff were white. Plaintiff has failed to show that Rite-Aid had an affirmative action policy or that there was any pressure on Rite-Aid to discriminate against white employees or to favor minority employees. Indeed, Plaintiff concedes that Rite-Aid did

not have a company policy or general practice of discriminating against its white employees.  Opp'n at 3.

Instead, Plaintiff claims, without citing to any evidence in the record, that he was "virtually" the only white employee at his pharmacy, and that his termination was due to Rite-Aid's "sensitivity to the minority population" and Rite-Aid's need to keep the peace "in the minority family of that store."  Opp'n at 3-4.  Plaintiff, however, has presented no evidence whatsoever to support these contentions, beyond the entirely speculative and self-serving claim in his declaration that Rite-Aid "had made the determination that I should be sacrificed to preserve the peace among the overwhelmingly black or minority population of that store."  Checka Declaration ("Decl.") ¶ 18.  As Rite-Aid aptly points out, this factually unsupported claim is actually at odds with other evidence offered by Plaintiff which shows that he "got along with all personnel and management" at the pharmacy, Checka Decl. ¶ 5, and that Plaintiff was perceived as being professional by his colleagues at work.  See Reply at 8 (citing the declarations of Green, Persaud, and Vizian).  These same co-workers did not hold Alene in high regard, in large part because of his reputation for unprofessional behavior in the workplace.  See id.

It is certainly true that plaintiffs in Title VII cases bear "an initial burden of proving by a preponderance of the evidence a prima facie case of unlawful discrimination," and that that

requirement is "not onerous."  <u>Harding</u>, 9 F.3d at 152.  Because
Plaintiff has presented no evidence showing "background
circumstances [that] support the suspicion that [Rite-Aid] is that
unusual employer who discriminates against the majority," <u>id.</u> at
153, Defendant's Motion for Summary Judgment must be **granted**.[3]

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for
Summary Judgment [**Dkt. No. 15**] is **granted**.  An Order shall
accompany this Memorandum Opinion.


March 11, 2008

/s/_____
Gladys Kessler
United States District Judge


**Copies to: Attorneys of record via ECF**

_____

[3] Because Plaintiff has failed to make out a <u>prima facie</u> case
by showing background circumstances supporting a claim of
discrimination, the Court need not address Defendant's argument
that Plaintiff was not similarly situated to Obidike and therefore
cannot show that his termination gives rise to an inference of
discrimination, or its argument that Plaintiff has failed to rebut
the legitimate, non-discriminatory reason Defendant offered for his
termination.